IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIELA OMOKWALE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 3:23-cv-00354-X |
| BAYLOR UNIVERSITY – LOUISE | § | |
| HERRINGTON SCHOOL OF NURSING, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

---

**DEFENDANT BAYLOR UNIVERSITY – LOUISE HERRINGTON
SCHOOL OF NURSING'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT AND BRIEF IN SUPPPORT**

---

CARLOS G. LOPEZ
clopez@thompsonhorton.com
State Bar No. 12562953

K. ADAM ROTHEY
arothey@thompsonhorton.com
State Bar No. 24051274

EMILY C. ADAMS
eadams@thompsonhorton.com
State Bar No. 24131209

**THOMPSON & HORTON LLP**
Ross Tower
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

*Attorneys for Defendant*
*Baylor University – Louise Herrington*
*School of Nursing*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................................ii

STATEMENT REGARDING PROCEDURAL POSTURE OF THIS MOTION ...........................1

SUMMARY OF ARGUMENT .............................................................................................................3

RELEVANT FACTUAL ALLEGATIONS .........................................................................................4

STANDARD OF REVIEW...................................................................................................................6

ARGUMENT AND AUTHORITIES...................................................................................................6

I.      Ms. Omokwale's breach of contract claim against the University should be dismissed
        because she does not plead the existence of a valid contract to provide her
        accommodations in her clinicals or a specific breach of that contract by the University. ........6

        A.      The Student Handbook does not constitute a contract between Baylor and
                Ms. Omokwale. .....................................................................................................................7

        B.      Ms. Omokwale has not otherwise pled the existence of a valid contract to
                provide the requested accommodations in her clinical courses....................................9

        C.      Ms. Omokwale has failed to plead a breach of a valid contract. ................................11

II.     To the extent Ms. Omokwale's claim is really an allegation of failure to accommodate
        under the ADA or the RA, she also fails to state such a claim because she still does not
        allege that she is a qualified individual with a disability, that the University knew the
        consequential limitations of her disability, or that the University failed to make a
        reasonable accommodation. ...............................................................................................................13

CONCLUSION....................................................................................................................................20

CERTIFICATE OF SERVICE ............................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Anyadike v. College*,
　No. 7:15-cv-00157-O, 2016 WL 7839183 (N.D. Tex. Mar. 14, 2016) ...............................................8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..............................................................................................................................6

*Bardwell v. Wal-Mart Stores Inc.*,
　32 F. App'x 127 (5th Cir. 2002) .......................................................................................................14

*Beavers v. Metro. Life Ins. Co.*,
　566 F.3d 436 (5th Cir. 2009)...............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)..............................................................................................................................6

*Benavides v. Tex. Dep't of Fam. and Protective Servs.*,
　No. 1:20-cv-1218-RP, 2022 WL 395981 (W.D. Tex. Feb. 9, 2022).......................................14

*Chavez v. McNeely*,
　287 S.W.3d 840 (Tex. App.— Houston [1st Dist.] 2009, no pet.)........................................9

*Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*,
　633 F. App'x 214 (5th Cir. 2015) ............................................................................... 16, 17

*Collins v. Morgan Stanley Dean Witter*,
　224 F.3d 496 (5th Cir. 2000)...............................................................................................................8

*Dark v. Potter*,
　No. 1:05-CV-293, 2007 WL 2385135 (E.D. Tex. Aug. 17, 2007), *aff'd*, 293 F.
　App'x 254 (5th Cir. 2008) ..............................................................................................................15

*DDH Aviation, L.L.C. v. Holly*,
　No. Civ.A. 302CV2598R, 2004 WL 2434247 (N.D. Tex. Oct. 29, 2004) .................................7, 11

*Delano-Pyle v. Victoria Cnty., Tex.*,
　302 F.3d 567 (5th Cir. 2002)............................................................................................................13

*Doe 1 v. Baylor Univ.*,
　240 F. Supp. 3d 646 (W.D. Tex. 2017) ..........................................................................................11

*Doe v. Tex. A&M Univ.*,
　No. H-21-3728, 2022 WL 5250294 (S.D. Tex. Oct. 6, 2022)................................13, 14, 17

*Dutcher v. Ingalls Shipbuilding*,
　53 F.3d 723 (5th Cir. 1995)..............................................................................................................14

*Francois v. Our Lady of the Lake Hospital, Inc.,*
   8 F.4th 370 (5th Cir. 2021)..................................................................................................13

*Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.,*
   995 F. Supp. 2d 587 (N.D. Tex. 2014)................................................................... 6, 7, 12

*Kaltenberger v. Ohio Coll. of Podiatric Med.,*
   162 F.3d 432 (6th Cir. 1998)..............................................................................................10

*Knighton v. Univ. of Tex. at Arlington,*
   No. 4:18-cv-00792-P, 2020 WL 1493554 (N.D. Tex. Mar. 27, 2020) ........................ 16, 17

*Lee v. Dall. Cnty.,*
   No. 3:19-cv-2690-L, 2020 WL 7388602 (N.D. Tex. Dec. 16, 2020) ...................................15, 16, 17

*Mahavongsanan v. Hall,*
   529 F.2d 448 (5th Cir. 1976)..............................................................................................18

*Maples v Univ. of Tex. Med. Branch at Galveston,*
   901 F. Supp. 2d 874 (S.D. Tex. 2012) ...............................................................................10, 18, 20

*Morris v. JP Morgan Chase Bank, N.A.,*
   No. EP–12–CV–358–PRM, 2013 WL 8476110 (W.D. Tex. Jan. 29, 2013)......................................12

*Provision Group, Inc. v. Crown Toxicology, Ltd.,*
   No. 5:16–CV–1291–DAE, 2017 WL 11221433 (W.D. Tex. Oct. 19, 2017) ......................... 7, 9, 11

*Regents of Univ. of Mich. v. Ewing,*
   474 U.S. 214 (1985)............................................................................................................18

*Shurb v. Univ. of Tex. Health Sci. Ctr. at Hous. Sch. of Medicine,*
   63 F. Supp. 3d 700 (S.D. Tex. 2014) .................................................................................18

*Southeastern Cmty. Coll. v. Davis,*
   442 U.S. 397 (1979)............................................................................................................10, 18, 19

*Southwell v. Univ. of Incarnate Word,*
   974 S.W.2d 351 (Tex. App.—San Antonio, 1998, pet. denied) ............................................8

*T.O. Stanley Boot Co. v. Bank of El Paso,*
   847 S.W.2d 218 (Tex. 1992)................................................................................................9

*Taylor v. Principal Financial Group, Inc.,*
   93 F.3d 155 (5th Cir. 1995)................................................................................................17

*Tobias v. Univ. of Tex. at Arlington,*
   824 S.W.2d 201 (Tex. App.—Fort Worth 1991, writ denied)...............................................8

*Univ. of Tex. Med. Sch. At Hous. v. Than,*
   901 S.W.2d 926 (Tex. 1995)....................................................................................................19

*Williams v. City of Richardson,*
   No. 3:16-CV-2944-L-BK, 2017 WL 4404461 (N.D. Tex. Sept. 8, 2017) ........................................15

*Windham v. Harris Cnty., Tex.,*
   875 F.3d 229 (5th Cir. 2017)....................................................................................................13

**Statutes**

29 U.S.C. §§ 701–797 (RA)......................................................................................................14

29 U.S.C § 794(a) ...................................................................................................................13

42 U.S.C. § 12102...................................................................................................................14

42 U.S.C. § 12102(1)...............................................................................................................14

42 U.S.C. § 12102(2)(A) ..........................................................................................................14

42 U.S.C. §§ 12131–12134 (ADA) .....................................................................................*passim*

**Other Authorities**

28 C.F.R. § 35.130(b)(7)..........................................................................................................18

34 C.F.R. § 104.44(a) .........................................................................................................17, 18

Fed. R. Civ. P. 12(b)(6)............................................................................................................6

Fed. R. Civ. P. 15(a)(3) ...........................................................................................................1

**STATEMENT REGARDING PROCEDURAL POSTURE OF THIS MOTION**

As requested on August 4, 2023, by the Court's Courtroom Deputy, Defendant Baylor University – Louis Herrington School of Nursing (the "University" or "Baylor") refiles its previously filed Motion to Dismiss Plaintiff's First Amended Complaint. In order to explain the basis for this refiling, and dispel any question regarding timeliness of this refiling, Baylor provides this brief statement regarding the procedural posture of this Motion to Dismiss Plaintiff's First Amended Complaint.

On March 2, 2023, Baylor filed its Motion to Dismiss Plaintiff's Complaint and Brief in Support ("Motion to Dismiss," Dkt. 4). On March 23, 2023, Plaintiff simultaneously filed a Response to the Motion to Dismiss (Dkt. 7), and a Motion for Leave to Amend Petition ("Motion for Leave," Dkt. 6), which requested leave that the attached "First Amended Petition for Breach of Contract" ("Proposed First Amended Complaint," Dkt 6–2) be filed in the case. Because Plaintiff's Proposed First Amended Complaint was filed within the deadline for amending as a matter of right—21 days after the service of Baylor's March 2, 2023, Motion to Dismiss—it appeared to Baylor that Plaintiff's Proposed First Amended Complaint was timely filed and did not require leave of Court. Moreover, although the Court had not ruled on the Motion for Leave, Federal Rule of Civil Procedure 15(a)(3) suggests that the deadline to file a "response to an amended pleading must be made within … 14 days after *service* of the amended pleading … ." (emphasis added). Therefore, out of an abundance of caution, since Plaintiff's Proposed First Amended Complaint appeared to have been timely filed as a matter of right and served on Baylor on March 23, 2023, as an attachment to its Motion for Leave, Baylor filed its Motion to Dismiss the Amended Complaint (Dkt. 9) on April 6, 2023, or within fourteen days of service of the Proposed First Amended Complaint.

On June 30, 2023, the Court entered an Electronic Order (Dkt. 16) granting Plaintiff's Motion for Leave (Dkt. 6), directing the Clerk to file the Proposed First Amended Complaint as the "First

1

Amended Complaint." The Court's June 30, 2023, Electronic Order further mooted Baylor's Motion to Dismiss (Dkt. 4) and directed Plaintiff to respond to Baylor's Motion to Dismiss "its now live [First Amended] Complaint (Dkt. 9), by July 21, 2023." A copy of the Electronic Order (Dkt. 16) as received on June 30, 2023, is attached as **Exhibit A**. Per the June 30, 2023 Electronic Order, the Clerk docketed Plaintiff's Proposed Amended Complaint (Dkt. 6-2), as Plaintiff's live First Amended Complaint (Dkt. 17) on June 30, 2023.

Based on the Court's June 30, 2023, Electronic Order, Baylor expected to receive, on or before July 21, 2023, Plaintiff's response to Baylor's already pending Motion to Dismiss the First Amended Complaint (Dkt. 9). However, Plaintiff did not file a response to Baylor's Motion to Dismiss the First Amended Complaint by July 21, 2023. Then, on August 1, 2023, the Court entered another Electronic Order finding as moot Baylor's Motion to Dismiss the First Amended Complaint (Dkt. 9) due to the filing of the First Amended Complaint. Dkt. 18. Because the Court had previously ordered Plaintiff to respond to Baylor's Motion to Dismiss the First Amended Complaint (Dkt. 9) by July 21, 2023 (Exhibit A), which Plaintiff did not do, Baylor does not know why the Court entered the August 1, 2023, Electronic Order mooting that very motion. Consequently, counsel for Baylor contacted the Courtroom Deputy on August 1, 2023, to gain insight into the discrepancy between the two orders. After that conversation, but also on August 1, 2023, the text of the June 30, 2023, Electronic Order (Dkt. 16) was modified to remove the original language directing Plaintiff "to respond to the defendant's motion to dismiss its now live complaint." A copy of the Court's ECF Docket for this case reflecting those modifications is attached as **Exhibit B**. Finally, on August 4, 2023, Counsel for Baylor received a voicemail from the Courtroom Deputy directing Baylor to refile its Motion to Dismiss the First Amended Complaint (Dkt. 9), for it to be considered. Baylor, therefore, files this Motion to Dismiss the First Amended Complaint in compliance with that directive from the Court.

## SUMMARY OF ARGUMENT

Plaintiff Daniela Omokwale's First Amended Complaint continues to allege a single claim of breach of contract against Baylor. *See* Dkt. 17. Ms. Omokwale claims the University contracted with her via a Fall 2021 Baylor University Louise Herrington School of Nursing Student Handbook ("Student Handbook") to provide her accommodations for an alleged disability. She claims she failed her clinicals because she was not provided with what she believes are appropriate accommodations. Because she failed her clinicals, she was removed from the nursing program. But Ms. Omokwale's breach of contract claim fails because the Student Handbook and related policies and procedures incorporated therein expressly disclaim that they constitute a contract between Ms. Omokwale and Baylor. Moreover, even if Ms. Omokwale could otherwise plead the existence of a contract with Baylor, express or implied, Ms. Omokwale has not demonstrated that the University ever contracted with her to provide her with the requested accommodations in her clinical courses. On the contrary, Ms. Omokwale cites no contractual language requiring Baylor to provide her with the requested accommodations in clinical courses. Ms. Omokwale further admits the University explicitly advised her that the requested accommodations did *not* apply to her clinical courses since clinical and lab courses, unlike in-class courses, have standards and time limitations to mimic the requirements that will be encountered by a practicing nurse after graduation to ensure the University's graduates can provide the high standard of care necessary in a medical setting. As a result, Ms. Omokwale has not stated a breach of contract claim because she has not demonstrated the existence of a valid contract to provide her with the complained-for accommodations in the clinical setting or a breach of any such contract. Moreover, to the extent her claims are in reality claims under the Americans with Disabilities Act (ADA) or Section 504 of the Rehabilitation Act (RA), any claim under the ADA and RA should be dismissed because her First Amended Complaint does not adequately plead that she is a qualified individual with a disability that limits her major life activities, that the University knew the

3

consequential limitations of her alleged disability, or that the University failed to make a reasonable accommodation. For these reasons, as further explained below, Ms. Omokwale's case should be dismissed.

**RELEVANT FACTUAL ALLEGATIONS**[1]

In January 2021, Daniela Omokwale enrolled as a nursing student at Baylor. She claims to suffer from rheumatoid arthritis. Dkt. 17, ¶ 7. Ms. Omokwale alleges she disclosed her rheumatoid arthritis to the University "prior to applying to and being accepted into [the University's] nursing program." *Id.*

Ms. Omokwale alleges that on or about January 11, 2021, she entered into a contract with the University in which she alleges the University agreed it would accommodate her disability (the "Contract"). *Id.* at ¶ 10.1. Ms. Omokwale alleges that the Contract "consists of, inter alia, the Fall 2021 student handbook." *Id.* at ¶ 6. She attaches an alleged copy of the Student Handbook to her First Amended Complaint. Dkt. 17-1. She does not identify any other specific documents that allegedly make up the so-called Contract. Consequently, it appears Ms. Omokwale only relies on the Student Handbook as the basis of the Contract.

Ms. Omokwale claims that as part of the Contract, the University agreed to "accommodate [her] disability appropriately." Dkt. 17, ¶ 10.1. In support, she cites one specific provision of the Student Handbook, which provides:

> All students admitted to Baylor University Louise Herrington School of Nursing must be able to meet the **Core Performance Standards** for admission and progression with or without accommodations. Students sign and submit the form at the time of application. Students who are seeking support services from the Baylor University Office of Access and Learning Accommodation (OALA) on the basis of diagnosed

---

[1]     Unless otherwise noted, the factual allegations set forth herein are taken from Ms. Omokwale's First Amended Complaint (Dkt. 17) and are presumed to be true for the purpose of this Motion. Citations to specific allegations in the First Amended Complaint are to the paragraph numbers used therein, although some of the paragraph numbering is not sequential. For example, paragraph 17 is followed by paragraphs 10.1, 10.2, etc.

4

disability are required to submit documentation to verify eligibility under Section 504 of the Rehabilitation Act of 1973.

*Id.* at ¶ 8; *see also* Dkt. 17-1, p. 19 (emphasis in original). Ms. Omokwale cites no language in the Student Handbook or elsewhere that discusses any alleged obligation to "accommodate [her] disability appropriately," or that defines what constitutes "appropriate" accommodations. Ms. Omokwale's purported obligations under the Contract were to pay tuition and attend classes and clinicals, which she alleges she complied with. Dkt. 17, ¶ 10.2.

With respect to accommodations of her disability, Ms. Omokwale alleges that she "followed the prescribed steps to request accommodations through the [OALA]" prior to August 23, 2021. *Id.* at ¶ 9. She states that she "provid[ed] acceptable documentation of her disability" to OALA and that OALA determined that her accommodations would include (1) "[o]ne and one-half times (150%) the standard time to complete any *in-class* assessments, such as tests, quizzes, or other time assignments;" (2) "[u]se of a computer *in class* for taking notes and writing essays;" and (3) "[u]se of a computer to type responses to short answers or essay questions as needed and when appropriate." *Id.* at ¶¶ 9–10 (emphasis added). She admits, however, that on August 9, 2021, the University also informed her in writing that the aforementioned accommodations "do *not* apply to labs or *clinicals*." *Id.* at ¶ 11 (emphasis added).

Ms. Omokwale failed one or more of her fall 2021 clinical courses and now alleges that she failed because she was not "afford[ed] the accommodation of time and a half (150%) on timed assessments," even though she knew the accommodations outlined by OALA did not apply to her clinicals. Dkt. 17, ¶¶ 11, 13. Ms. Omokwale further alleges that the "Equity, Civil Rights, and Title IX Office" of the University ("Equity Office") investigated and "found that [the University] did deny [her] right to be accommodated for her disability." *Id.* at ¶¶ 15–16. She attaches photographs of a computer screen containing what she alleges is a copy of the Confidential Administrative Report ("Report") from the Equity Office. Dkt. 17-2, PageID 324–57. The alleged Report finds that the

accommodation regarding "timed assessments" could be read to apply to patient care notes required to be completed after clinicals, and allegedly concludes that that "another review by OALA of Ms. Omokwale's accommodation request, specifically, as it relates to the extension of time for written clinical assignments is highly suggested," though not necessarily required *Id.* at PageID 338.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that, when assumed to be true, state a claim for relief that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint pleads facts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id.* (citation omitted). Although a court must accept well-pleaded facts as true, neither conclusory allegations nor "legal conclusions masquerading as factual conclusions" are entitled to a presumption of truth. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *see also Iqbal*, 556 U.S. at 678–79, 681. A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must provide "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT AND AUTHORITIES

**I. Ms. Omokwale's breach of contract claim against the University should be dismissed because she does not plead the existence of a valid contract to provide her accommodations in her clinicals or a specific breach of that contract by the University.**

Under Texas law, the essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff as a result of the breach. *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Mullins v. TestAmerica,*

*Inc.*, 564 F.3d 386, 418 (5th Cir. 2009); *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). "The necessary elements of both written and oral contracts are the same and must be present for a contract to be binding." *Provision Group, Inc. v. Crown Toxicology, Ltd.*, No. 5:16–CV–1291–DAE, 2017 WL 11221433, at *3 (W.D. Tex. Oct. 19, 2017). In order to show the existence of a valid contract, the plaintiff must show the following five elements: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding. *DDH Aviation, L.L.C. v. Holly*, No. Civ.A. 302CV2598R, 2004 WL 2434247, at *2 (N.D. Tex. Oct. 29, 2004). Moreover, in order to sufficiently plead a breach of the contract to withstand a motion to dismiss, "a plaintiff must identify a specific provision of the contract that was allegedly breached." *Innova Hosp. San Antonio, L.P.*, 995 F. Supp. 2d at 602. The "[p]laintiffs must provide enough factual allegations to draw the reasonable inference that the elements exist." *Id.* at 603.

Ms. Omokwale does not plead a valid breach of contract claim because: (1) the Student Handbook and the student policies and procedures incorporated therein expressly disclaim that they constitute a contract between Ms. Omokwale and Baylor; (2) even if Ms. Omokwale could otherwise plead the existence of a valid contract, express or implied, her First Amended Complaint does not demonstrate the existence of a valid contract to provide the requested accommodations to Ms. Omokwale in her clinical courses; and (3) she therefore cannot show the University breached such a contract by not providing the requested accommodations in her clinical courses.

### A. The Student Handbook does not constitute a contract between Baylor and Ms. Omokwale.

Ms. Omokwale alleges the Contract consists of the Student Handbook. While a student handbook may create a binding contract under certain circumstances, those circumstances are not present here where the Student Handbook and the student policies and procedure cited and

7

incorporated by reference therein, expressly disclaim that they constitute a contract, express or implied, between Baylor and its students, like Ms. Omokwale.

The Student Handbook Ms. Omokwale attaches to her First Amended Complaint states that its purpose is to "provide [students] with the policies, guidelines, and general information specific to the School of Nursing." Dkt. 17-1, p. 2. It further provides that the Student Handbook "is to be used in conjunction with the official Baylor University Student Policies and Procedures available online at http://www.baylor.edu/student_policies." *Id.* The preamble to the "Student Policies and Procedures" available at the linked-to website states: "The provisions of the Student Policies and Procedures do not constitute a contract, express or implied, between Baylor University and any applicant, student, student's family, or faculty or staff member. Baylor reserves the right to change the policies, procedures, rules, regulations, and information at any time."[2] Courts have repeatedly found that student handbooks containing similar language do not constitute a valid contract, because they do not demonstrate an intent to be bound by their terms. *See Anyadike v. College*, No. 7:15-cv-00157-O, 2016 WL 7839183, at *6 (N.D. Tex. Mar. 14, 2016) (holding the student handbook did not constitute a valid contract where the handbook stated it was subject to "changes in the policies and regulations"); *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 355–56 (Tex. App.—San Antonio, 1998, pet. denied) (student bulletin did not create a contract between a university and a student because there was no intent to be bound where the college reserved the right to alter the bulleting without prior notice); *Tobias v. Univ. of Tex. at Arlington*, 824 S.W.2d 201, 211 (Tex. App.—Fort Worth 1991, writ denied) (holding no enforceable contract exists where "the catalog contains the express notice that

---

[2]     Student Policies and Procedures, *at* https://studentpolicies.web.baylor.edu/student-policies-and-procedures (last visited Aug. 9, 2023). The Court may consider these Student Policies and Procedures at the motion to dismiss stage, because they are referenced in the Student Handbook attached to the First Amended Complaint and are central to Ms. Omokwale's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (holding the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint).

'[t]he provisions of this catalog do not constitute a contract, express or implied, between any applicant, student, or faculty member and The University of Texas at Arlington or The University of Texas System'"). Consequently, the Student Handbook, along with the Student Policies and Procedures incorporated by reference therein, do not constitute a contract for the purposes of stating a breach of contract claim.

> **B.    Ms. Omokwale has not otherwise pled the existence of a valid contract to provide the requested accommodations in her clinical courses.**

Even if Ms. Omokwale had pled or could otherwise plead the existence of a valid contract between her and Baylor—which she has not—she still has not pleaded that Baylor expressly contracted with her to provide the accommodations she claims she needed to pass her clinical courses. In Texas, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations. *See Provision Group, Inc.*, 2017 WL 11221433 at \*3 (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)). A contract is sufficiently definite if a court can determine the respective legal obligations of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992). A reasonably certain contract provides a basis for determining whether a breach has occurred and the appropriate remedy, meaning if a contract "is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable agreement." *Chavez v. McNeely*, 287 S.W.3d 840, 845 (Tex. App.— Houston [1st Dist.] 2009, no pet.).

Under the foregoing caselaw, Ms. Omokwale's allegations with respect to the alleged formation and terms of the Contract with respect to accommodations in her clinical courses are too vague to fix the parties' legal obligations under the Contract and constitute an enforceable agreement. Ms. Omokwale has not and cannot demonstrate that the Student Handbook at issue here or any other agreement or promise, express or implied, constituted a valid contract to provide her with the accommodations she claims she needed to pass her clinical courses. Ms. Omokwale only vaguely

alleges that the Student Handbook compelled the University to "accommodate [her] disability appropriately." Dkt. 17, ¶ 10.1. But the Student Handbook contains no such language. Instead, as cited in her First Amended Complaint, the Student Handbook merely states that "[s]tudents who are seeking support services from [OALA] on the basis of diagnosed disability are required to submit documentation to verify eligibility under the [RA]." *Id.* at ¶ 8; Dkt. 17-1, p. 19. While Ms. Omokwale allegedly did submit this documentation, nowhere in the Student Handbook or elsewhere did the University ever agree to provide Ms. Omokwale with the specific accommodations she claims she needed to pass her clinicals. Consequently, the First Amended Complaint has not pleaded the existence of contract langauge sufficiently definite as to show that the University agreed to terms that it would provide the afforded in-class accommodations in the clinical setting.

On the contrary, Ms. Omokwale admits the University explicitly advised her that any accommodations she received for her in-class work would "*not* apply to labs or *clinicals*." Dkt. 17, ¶ 11 (emphasis added). This makes sense, since clinical and lab courses, unlike in-class assessments, have standards and time limitations to mimic the requirements that will be encountered by a practicing nurse after graduation. *See Maples v Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 883–84 (S.D. Tex. 2012) (finding that "[r]equiring high standards for future physician assistants is necessary for the proper treatment of patients" and that "[t]he decision of the [c]ollege not to waive [its] requirement and lower the standards for continued training … is entitled to deference"); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) (stating that "[t]he decision of the [c]ollege not to … lower the standards for continued training in podiatric medicine is entitled to deference" and courts "should only reluctantly intervene in academic decisions 'especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession'") (citation omitted); *see also Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 389–99 (1979) (finding no violation of the RA where an applicant

10

for the nursing program was denied entry for a hearing disability that made it unsafe to practice as a nurse because "the purpose of petitioner's program was to train persons who could serve the nursing profession in all customary ways, and this type of purpose, far from reflecting any animus against handicapped individuals, is shared by many if not most of the institutions that train persons to render professional service").

Thus, Ms. Omokwale cannot show an offer, acceptance, meeting of the minds, consent, and execution and delivery of a contract to provide her with the requested accommodations in her clinicals so as to state the existence of a valid contract to provide her accommodations in her clinicals.[3] *DDH Aviation, L.L.C.*, 2004 WL 2434247, at *2. As a result, her First Amended Complaint does not show the existence of a valid contract to provide accommodations in her clinicals, and her breach of contract claim should be dismissed. *See Provision Group, Inc.*, 2017 WL 11221433 at *3 (dismissing a breach of contract claim where "the material terms of the alleged oral contract, as pled in the complaint, are overly broad, cursorily explained in one sentence, and insufficiently definite, which does not allow the Court to understand the parties' obligations") (citing *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846); *see also Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 668 (W.D. Tex. 2017) (dismissing plaintiffs' breach of contract claim where "[p]laintiffs do not identify the terms or obligations of the purportedly breached contract, nor do they suggest what document or documents comprise that contract").

### C.    Ms. Omokwale has failed to plead a breach of a valid contract.

Because Ms. Omokwale has not pleaded the University entered into a valid contract to provide her with the requested accommodations in her clinicals, she likewise has not pleaded allegations that

---

[3]    It should be noted that the alleged copy of the Student Handbook attached to Ms. Omokwale's First Amended Complaint is not even signed by her. Dkt. 17-1, p. 42. Ms. Omokwale's pleadings regarding the execution of the Contract in the First Amended Complaint are therefore "insufficiently definite" to show what the obligations of the parties were under the Contract. *See Provision Group, Inc.*, 2017 WL 11221433, at *4 (citing *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846). Because Ms. Omokwale failed to show proper execution for creating a valid and enforceable contract, her claim should be dismissed.

draw the reasonable inference that the University breached such a contract. In order to survive a motion to dismiss a breach of contract claim, the plaintiff must "identify a specific provision of the contract that was allegedly breached." *Innova Hosp. San Antonio, L.P.*, 995 F. Supp. 2d at 602; *see also Morris v. JP Morgan Chase Bank, N.A.*, No. EP–12–CV–358–PRM, 2013 WL 8476110, at *4 (W.D. Tex. Jan. 29, 2013) (dismissing breach of contract claim for failure to state a claim where the plaintiff failed to show defendants breached the contract because the "[p]laintiffs do not identify any specific contract provisions that may have been violated").

Here, Ms. Omokwale states that the Contract "provided that [the University] would accommodate [her] disability appropriately," but the section of the Student Handbook that Ms. Omokwale cites in support of that allegation does not actually impose an obligation on the University to have "accommodate[d] [her] disability appropriately" or provided her with accommodations in her clinicals. Dkt. 17, ¶ 10.1. Rather, it merely states that students "must be able to meet the Core Performance Standards for admission and progression with or without accommodations" and that students "seeking support services from [OALA] on the basis of diagnosed disability are required to submit documentation to verify eligibility under Section 504 of the Rehabilitation Act of 1973." *Id.* at ¶ 8; Dkt. 17-1, p. 19. And the First Amended Complaint cites no other language from any other alleged agreement or contract that imposes such an obligation. As a result, Ms. Omokwale does not provide sufficient factual allegations to draw the reasonable inference that the University breached any provision of the Student Handbook or other contract with respect to the alleged failure to provide accommodations in her clinicals, and her claim should be dismissed.

II.     **To the extent Ms. Omokwale's claim is really an allegation of failure to accommodate under the ADA or the RA, she also fails to state such a claim because she still does not allege that she is a qualified individual with a disability, that the University knew the consequential limitations of her disability, or that the University failed to make a reasonable accommodation.**

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §§ 12131–12134. Likewise, under Section 504 of the RA, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C § 794(a).

The close relationship between Section 504 of the RA and the ADA means that "jurisprudence interpreting either section is applicable to both." *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (citation omitted); *see also Francois v. Our Lady of the Lake Hospital, Inc.*, 8 F.4th 370, 377 (5th Cir. 2021) ("[P]recedent interpreting or applying the ADA applies with equal force to a claim under the RA"). To state a discrimination claim under Section 504 of the RA and the ADA, a plaintiff must allege: (1) [plaintiff] is a qualified individual within the meaning of the ADA [or RA]; (2) that [he or she] is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [his or her] disability. *Doe v. Tex. A&M Univ.*, No. H-21-3728, 2022 WL 5250294, at *9 (S.D. Tex. Oct. 6, 2022) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). A plaintiff under the ADA or RA may satisfy the third prong under a theory of failure to accommodate. *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017). In order to avoid dismissal of a failure to accommodate ADA or RA claim, the plaintiff must show (1) [he or she] is a qualified individual with

13

a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations. *Doe*, 2022 WL 5250294, at \*10 (citing *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020)). Here, Ms. Omokwale does not properly plead any part of her claim of failure to accommodate under the ADA or RA.

As to the first element, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). A similar definition applies under the RA. *See Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725–26 n.4 (5th Cir. 1995) (noting "that [the ADA 42 U.S.C. § 12102] definition of "disability" is substantially equivalent to that in the RA, 29 U.S.C. §§ 701–797"). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A); *see Dutcher*, 53 F.3d at 726 (stating that ADA definition of "major life activities" is the same under the RA). In order to show that an individual is a qualified individual with a disability, the plaintiff must show how the alleged impairment substantially limits one or more major life activities. *See Dutcher*, 53 F.3d at 726 ("A physical impairment standing alone, is not necessarily a disability as contemplated by the ADA. The statute requires an impairment that substantially limits one or more of the major life activities."); *Bardwell v. Wal-Mart Stores Inc.*, 32 F. App'x 127, at \*1 (5th Cir. 2002) (finding plaintiff was not a qualified individual under the ADA for failing to establish that her disability of rheumatoid arthritis or fibromyalgia substantially limited her in one or more major life activities where she maintained only that she had difficulty with household tasks). A plaintiff that fails to show how the alleged impairment substantially limits one or more major life activities faces dismissal when subject to a motion to dismiss. *See Benavides v. Tex. Dep't of Fam. and Protective Servs.*, No. 1:20-cv-1218-RP, 2022 WL 395981, at \*2–3 (W.D. Tex. Feb. 9, 2022) (dismissing failure to accommodate claim under the RA where plaintiff merely stated her disability and no other

facts to show how the disability limited her work); *Williams v. City of Richardson*, No. 3:16-CV-2944-L-BK, 2017 WL 4404461, at *8 (N.D. Tex. Sept. 8, 2017), *report and recommendation adopted*, No. 3:16-CV-2944-L, 2017 WL 4351535 (N.D. Tex. Sept. 30, 2017) (dismissing for failure to allege in the complaint that the plaintiff's back injury was a disability or that it substantially limited a life activity when he alleged he could not sit for extended periods of time as it would aggravate the injury); *Dark v. Potter*, No. 1:05-CV-293, 2007 WL 2385135, at *5 (E.D. Tex. Aug. 17, 2007), *aff'd*, 293 F. App'x 254 (5th Cir. 2008) (granting motion to dismiss disability discrimination claim under ADA for failure of plaintiff to explain how bilateral carpal tunnel syndrome and a herniated disc substantially limited a major life activity like working).

Here, Ms. Omokwale still has not properly pleaded that she is a qualified individual with a disability because aside from alleging that she has rheumatoid arthritis, she has not pleaded any facts that shows how her medical condition has substantially limited her major life activities. As a result, Ms. Omokwale does not properly plead she is a qualified individual with a disability for the purpose of stating a claim for failure to accommodate under the ADA or RA.

Even if Ms. Omokwale had sufficiently pleaded she is a qualified individual with a disability, which she has not, any potential ADA and RA claims still fail because she does not adequately allege that the University knew the consequential limitations of her alleged disability. In order to properly plead that an institution knew of their disability and consequential limitations, the plaintiff must allege that "they identified their disability as well as the resulting limitations to a[n] entity or its employees and requested an accommodation in direct and specific terms." *Lee v. Dall. Cnty.*, No. 3:19-cv-2690-L, 2020 WL 7388602, at *8 (N.D. Tex. Dec. 16, 2020) (citing *Smith*, 956 F.3d at 317). Where there is no "allegation of knowledge of the resulting limitation from the disability, nor an allegation that [p]laintiff requested an accommodation in direct and specific terms" such a claim is properly dismissed. *Lee*, 2020 WL 7388602, at *8 (holding plaintiff failed to state a claim for failure to accommodate under the

ADA and RA because plaintiff failed to request the accommodation in direct and specific terms when he told defendant officials of pain in his knees and made no mention of the resulting limitation); *see also Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 216 (5th Cir. 2015) (affirming motion to dismiss plaintiff's claim for failure to provide a reasonable accommodation under the ADA and RA because plaintiff "never alleges that he provided the School with any information about his disability beyond his diagnosis"); *Knighton v. Univ. of Tex. at Arlington*, No. 4:18-cv-00792-P, 2020 WL 1493554, at *6 (N.D. Tex. Mar. 27, 2020) (granting motion to dismiss on ADA failure to accommodate claim where plaintiff "relies on vague and conclusory assertions that [defendant] was 'aware of the disability' and that 'she disclosed it to them on many occasions'"). Furthermore, in the absence of adequate allegations regarding knowledge, a plaintiff may only defeat a 12(b)(6) motion if the limitation and necessary reasonable accommodation "were open, obvious, and apparent to the entity's relevant agents." *Lee*, 2020 WL 7388602, at *8 (citing *Smith*, 956 F.3d at 318).

Like in *Choi* and *Knighton*, Ms. Omokwale has failed to plausibly allege that her disability and its consequential limitations *in the clinical setting* were known by the University. Her First Amended Complaint states only in conclusory fashion that she "provid[ed] acceptable documentation of her disability" to OALA prior to applying, and "repeatedly requested" accommodation. Dkt. 17, ¶¶ 9, 12. But these vague allegations fail to show that Ms. Omokwale made the University aware of the *limitations* of her alleged disability in the context of her *clinicals. See Choi*, 633 F. App'x at 216 ("'[I]t is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability … because the ADA requires employers to reasonably accommodate *limitations*, not disabilities.'") (quoting *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1995)) (emphasis added). Her allegations also fail to satisfy the requirement that she requested accommodations in the clinical setting in direct and specific terms or that her disability and the necessary reasonable accommodations were open, obvious,

and notorious to the University. As a result, Ms. Omokwale has failed to sufficiently plead that her alleged disability and its consequential limitations in the clinical setting were known by the University. *See Choi*, 633 F. App'x at 216 (affirming dismissal of plaintiff's claim for failure to provide a reasonable accommodation under the ADA and RA because plaintiff failed to show that his disability and its consequential limitations were known by the school); *Knighton*, 2020 WL 1493554 at *6 (granting motion to dismiss on ADA failure to accommodate claim where plaintiff failed to plead the disability and its consequential limitations were known to the defendant in her complaint); *see also Lee*, 2020 WL 7388602 at *8 (dismissing ADA and RA claim for failure to accommodate where plaintiff failed to plead the disability and its consequential limitations were known to the defendant).

Finally, the plaintiff must allege facts that show the defendant failed to make reasonable accommodation. In the Fifth Circuit, "[w]here the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer [or university], … the initial burden rests primarily upon the employee [or student] … to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor*, 93 F.3d at 165; *see also Choi*, 633 F. App'x at 216 (applying principles regarding an employer's knowledge of a disability and its consequential limitations to claims by student in the university context); *Doe*, 2022 WL 5250294 at *10 (same); *Knighton*, 2020 WL 1493554 at *5 (stating that in the context of a student challenging a university for failure to accommodate, "a plaintiff must 'specifically identify the disability and resulting limitations [and] request an accommodation in direct and specific terms'") (citing *Windham*, 875 F.3d at 237).

In the education setting, under the RA, a university is required to "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a). Such "[m]odifications may include changes in the length of time

permitted for the completion of degree requirements, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted." *Id.* Similarly, under the ADA, a university is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). However, under the RA and ADA, a university is "*not* required to provide accommodations that would 'fundamentally alter the nature of the service, program, or activity' and need not alter eligibility criteria that are 'shown to be necessary for the provision of the service, program, or activity being offered.'" *Maples*, 901 F. Supp. 2d at 883 (citing 28 C.F.R. § 35.130(b)(7)–(8)) (emphasis added). The RA imposes "no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Davis*, 442 U.S. at 389–99; *see also Shurb v. Univ. of Tex. Health Sci. Ctr. at Hous. Sch. of Medicine*, 63 F. Supp. 3d 700, 710 (S.D. Tex. 2014) (stating "federal disability discrimination laws mandate only the right to reasonable accommodations for qualified individuals with disabilities; they do not provide an automatic right to a plaintiff's preferred accommodations or unfettered admission/access to the plaintiff's chosen educational institution"); *Maples*, 901 F. Supp. 2d at 883–84 (finding that "[r]equiring high standards for future physician assistants is necessary for the proper treatment of patients" and that "[t]he decision of the [c]ollege not to waive [its] requirement and lower the standards for continued training ... is entitled to deference").

In addition, out of respect for university freedom, federal courts engage in "restrained judicial review of the substance of [a university's] academic decisions." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 513–14 (1985); *see also Mahavongsanan v. Hall*, 529 F.2d 448, 449–50 (5th Cir. 1976) ("[W]e know of no case which holds that colleges and universities are subject to supervision or review of the courts in the uniform application of their academic standards."). Indeed, the Texas Supreme Court has recognized universities' broad authority to make their own decisions about the educational

18

process. *See Univ. of Tex. Med. Sch. At Hous. v. Than*, 901 S.W.2d 926, 934 (Tex. 1995) ("[T]he injunctive relief represents unwarranted judicial interference with the educational process.").

In fact, the Supreme Court has held that section 504 of the RA does not forbid professional schools from imposing physical qualifications for admission to clinical training programs. *Davis*, 442 U.S. at 389–99. In *Davis*, an applicant for the nursing program was denied entry for a hearing disability that made it unsafe for the applicant to practice as a nurse. The Supreme Court held that the college did not violate the RA because "the purpose of [the college]'s program was to train persons who could serve the nursing profession in all customary ways, and this type of purpose, far from reflecting any animus against handicapped individuals, is shared by many if not most of the institutions that train persons to render professional service." *Davis*, 442 U.S. at 389. The college needed to maintain the standards of the nursing profession in order to produce nurses that could successfully transition to the practical setting and could therefore impose physical qualifications on the program to ensure graduates were meeting those standards. *Id.*

Like *Davis*, Baylor needs to maintain its clinical courses to the standards of the nursing profession and, as a result, Baylor is entitled to establish limits on accommodations in the clinical courses that are needed to maintain the standards of the nursing profession in order to produce nurses that can successfully transition to the practical setting. Here, Ms. Omokwale alleges that she was granted three different *in-class* accommodations. Additionally, the University's Coordinator of Academic Success specifically informed Ms. Omokwale that "accommodations do not apply to labs or clinicals." Dkt. 17, ¶ 11. Ms. Omokwale, therefore, has not shown that the University was under an obligation to accommodate Ms. Omokwale's disability in a clinical setting designed to mimic the requirements that will be encountered by a practicing nurse after graduation. On the contrary, the University has broad discretion to make decisions about academic standards for the nursing program as a professional school and what accommodations are appropriate in different settings and "need not

alter eligibility criteria that are 'shown to be necessary for the provision of the service, program, or activity being offered.'" *Maples*, 901 F. Supp. at 883 (citing 28 C.F.R. § 35.130(b)(7)–(8)). Therefore, Ms. Omokwale has failed to show that the University failed to make a reasonable accommodation.

The alleged findings in the Report do not change this outcome. As reflected in the alleged Report, Ms. Omokwale "failed the [clinical] course primarily because she was unsafe in providing care with her patients, not related to her physical limitations … ." Dkt. 17-2, PageID 336. And while the Report allegedly found some aspects of clinical work could "[l]oosley … be viewed as a timed assignment" for which accommodations could have been granted, it only "highly suggested" that OALA do "another review … of Ms. Omokwale's accommodation request, specifically as it relates to the extension of time for written clinical assignments," and ultimately found that the University merely had a "disconnect" in disability accommodation, and that "[Ms. Omokwale] may need another diagnostic assessment to provide OALA with current information about her disability." *Id.*, PageID 337, 339–40. However, the alleged findings of the Report are irrelevant to the legal questions at issue here of whether Ms. Omokwale has adequately pleaded a breach of contract claim or a violation of the ADA or RA under the standards applicable for stating a claim in federal court. As a result, the Report does not alter the fact, demonstrated above, that Ms. Omokwale has not stated a claim for breach of contract or failure to accommodate under the ADA or RA.

## CONCLUSION

Ms. Omokwale's First Amended Complaint does not state a claim for breach of contract because the Student Handbook does not constitute a contract and she does not otherwise adequately plead the elements of a valid contract, much less a valid contract to provide the requested accommodations in the clinical setting, or how such a contract was breached. And, although not specifically pleaded, to the extent her claims are really claims for failure to accommodate under the ADA or RA, she likewise does not plausibly allege that she is a qualified individual with a disability,

20

that the University knew the consequential limitations of her disability, or that the University failed to make a reasonable accommodation of those limitations. For the reasons outlined in this motion—which are substantially the same reasons outlined in the University's Motion to Dismiss Ms. Omokwale's original Complaint (Dkt. 4)—the University respectfully requests that the Court dismiss Ms. Omokwale's case with prejudice.

Respectfully submitted,

/s/      *Adam Rothey*
CARLOS G. LOPEZ
clopez@thompsonhorton.com
State Bar No. 12562953

K. ADAM ROTHEY
arothey@thompsonhorton.com
State Bar No. 24051274

EMILY C. ADAMS
eadams@thompsonhorton.com
State Bar No. 24131209

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
972-853-5115 Telephone
972-692-8334 Facsimile

*Attorneys for Defendant*
*Baylor University – Louise Herrington School of Nursing*

21

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing pleading has

been served upon counsel for all parties via the Court's e-filing system or email on August 9, 2023.

George H. Shake
DUFFEE + EITZEN LLP
4311 Oak Lawn Avenue
Suite 600
Dallas, Texas 75219
george@d-elaw.com

*/s/     Adam Rothey*
K. ADAM ROTHEY